UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

Sandra J. Oglesby and Donald
Oglesby,

                                        Plaintiffs,


          -v.-                                                   1:07-CV-00051
                                                                 (NPM-RFT)

Holly Eikszta, individually; Lisa Wiles,
individually; Nancy Sharoff, individually;
Victoria Leland, individually; Theresa
Sheely, individually; Sherry Sharpe,
individually; Tashia Brown, individually;
and the Ellenville Central School District,
New York,


                                        Defendants.

_____

APPEARANCES:                            OF COUNSEL:

Attorneys for Plaintiffs:

LOVETT & GOULD, LLP                     JONATHAN LOVETT
222 Bloomingdale Road
White Plains, NY 10605-1513


Attorneys for Defendants:

TARSHIS, CATANIA, LIBERTH,
 MAHON & MILLIGRAM, PLLC                RHETT D. WEIRES
One Corwin Court
P.O. Box 1479
Newburgh, NY 12550


Neal P. McCurn, Senior District Judge

## MEMORANDUM-DECISION and ORDER

### I.  Introduction

The plaintiffs in this case are Sandra J. and Donald Oglesby, the adoptive parents of twin girls, IG and NR ("the twins"), and biological parents of a son, ID. The Oglesbys seek relief from the defendants in this case – the Ellenville Central School District ("the School District") and several of its employees in their individual capacities ("the individual defendants") – for injuries allegedly suffered as a result of defendants' alleged malicious and false report of child abuse against plaintiffs to the Child Protective Service ("CPS") in Kingston, New York. Presently before the court are two motions to dismiss all pending causes of action for failure to state claims upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6).[1]  Plaintiffs oppose, and defendants reply.  The court heard oral argument regarding both motions on June 6, 2007 in Albany, New York, and thereafter reserved decision.

### II.  Procedural Background

Plaintiffs' initial complaint set forth one civil rights claim pursuant to 42 U.S.C. § 1983 ("section 1983"), which was predicated on a claim for violation of their right to intimate association as guaranteed by the Fourteenth Amendment to the United States Constitution.  See Compl. ¶¶ 37-38, Dkt. No. 1.  In addition, the initial complaint set forth a claim for the New York common law tort of *per se* defamation.  See id. ¶¶ 39-40.  Defendants promptly filed a Rule 12(b)(6) motion

---

[1] Subsequent to the filing of the initial motion to dismiss, plaintiffs amended their complaint, adding two defendants and replacing a state defamation claim with a federal civil rights claim.  Defendants filed a second motion to dismiss in order to address the additional defendants and civil rights claim.

1

to dismiss the entire complaint.  On the same day plaintiffs filed their opposition papers regarding the motion, they also filed an amended complaint,[2] which added two School District employees as defendants and eliminated the *per se* defamation claim.[3]  Plaintiffs' amended complaint sets forth two section 1983 claims: Count I is predicated on a claim for violation of their right to intimate association, as guaranteed by the First and Fourteenth Amendments to the United States Constitution, and Count II is predicated on a claim for retaliation in violation of their First Amendment rights.  See Am. Compl. ¶¶ 41-44, Dkt. No. 16.  In their reply papers regarding the first motion as well as their papers in support of their second motion to dismiss, defendants make clear their intent to move for dismissal of both section 1983 causes of action.

### III.  Factual Background

For purposes of deciding the present motion, the court will, as it must,

---

[2] A motion to dismiss is not a responsive pleading for Rule 15 purposes.  See Fed. R. Civ. P. 15(a); Barbara v. New York Stock Exch., Inc., 99 F.3d 49, 56 (2d Cir. 1996).  Therefore, because defendants have not yet filed an answer, plaintiffs amended their complaint as of right in accordance with Rule 15.

[3] In their reply papers, defendants request that the court attach prejudice to the withdrawal of the *per se* defamation claim, because "[c]learly, [plaintiffs'] decision to withdraw [said] claim, rather than oppose [the pending motion to dismiss], reveals the suspect nature of the claim ... ." Defs' Reply Mem. of Law at 4, Dkt. No. 20.  In support of their argument, defendants cite Manbeck v. Katonah-Lewisboro School District, 435 F.Supp.2d 273 (S.D.N.Y. 2006) wherein the court there noted that where the defendants had not filed an answer, plaintiff was allowed to amend her complaint *subject to* the pending motion to dismiss.  See id. at 275.  However, unlike here where plaintiffs withdraw one of their originally pled causes of action, in Manbeck, the plaintiff amended her complaint to expand the defined class of plaintiffs and to allege an additional cause of action.  See id.   There is nothing in Manbeck to suggest that a claim, once pleaded, but then properly withdrawn, remains before the court for a decision whether to dismiss said claim with prejudice.  Moreover, the rationale for defendants' request is specious, and the court is loath to speculate as to plaintiffs' reasons for withdrawing their defamation claim.  As such, the court declines defendants' request to attach prejudice to the withdrawal of said claim.

accept the allegations of fact in plaintiffs' amended complaint as true, drawing all reasonable inferences in their favor.  See Iqbal v. Hasty, — F.3d —, 2007 WL 1717803, at *5 (2d Cir. June 14, 2007).

In July 2002, plaintiffs adopted twin girls, IG and NR, whom were then four years old.  At that time, their biological son, ID, was six.  The twins' two older biological brothers initially resided with plaintiffs in a pre-adoptive capacity.  Subsequent to their adoption of the twins, plaintiffs learned of the children's history of physical and sexual abuse by their biological parents, among others.  One of the results of the abuse was that the children would routinely engage in sex acts with one another.  ID was inadvertently an observer on one such occasion and was also subjected to conduct of a sexual nature by IG.  Eventually, after intensive psychiatric and medical intervention, the plaintiffs determined that the twins' biological brothers could not remain in their home due to the brothers' sexually predatory behavior toward the twins.

With intervention, the twins' psychological and medical conditions improved, and eventually they were enrolled in an elementary school in the School District.  All of the information regarding the twins' history and the circumstances surrounding their brothers' removal from plaintiffs' home, was communicated to the following individually named defendants: Holly Eikszta ("Eikszta"), principal of the elementary school where the twins are enrolled; Lisa Wiles ("Wiles"), superintendent of the School District; Nancy Sharoff ("Sharoff"), ID's former teacher; Victoria Leland ("Leland"), school nurse at the elementary school where the twins are enrolled; Theresa Sheely ("Sheely"), school psychologist at the elementary school where the twins are enrolled; Sherry Sharpe ("Sharpe"), Committee on Special Education ("CSE") chairperson; and Tashia Brown

3

("Brown"), assistant principal and chairperson of the "504 Committee".

In kindergarten, IG was mistreated by her teacher and guidance counselor, and thereafter her behavior regressed. As a result, plaintiffs intervened by addressing their concerns about IG's mistreatment to Eikszta and IG's then teacher. During first grade, IG acted inappropriately at times, but within normal limits, and developed into an "A" student. However, the following school year, which commenced in the fall of 2005, IG's condition deteriorated, and she eventually was hospitalized. During her almost one-month hospitalization, the School District, through Wiles, failed to provide IG with a tutor for all but one week.

One of the behaviors exhibited by IG which led to her hospitalization was self mutilation through masturbation with sharp objects. When IG returned to school in January 2006, plaintiffs notified Leland (school nurse) and Sheely (school psychologist) of the circumstances surrounding IG's hospitalization, and that IG required close supervision at school, especially in the bathroom. Sheely, however, refused to provide monitoring and/or supervision for IG, as a result of which IG self mutilated and compulsively masturbated on a daily basis by using a long, metal spigot attached to the toilet in the nurse's bathroom. Sheely further refused to provide psychological counseling for IG, despite receipt of the hospital discharge documentation and her participation in several meeting with plaintiffs, during which she was cautioned regarding IG's recent behaviors.

Plaintiffs met with Wiles (superintendent) in April 2006 to advise her of, among other things, the danger posed to IG as a result of the spigot and Leland's refusal to monitor IG while in the bathroom. A few days after this meeting, plaintiffs sent a letter to Sharoff (ID's teacher) on an unrelated matter regarding

4

ID, wherein they challenged her abusive treatment of students.  Plaintiffs again communicated with Wiles a second time that week, along with, among others, Eikszta (school principal), demanding a safe environment for IG at school.

Later in April 2006, after plaintiffs made the aforementioned complaints, Defendants called CPS and filed the following false complaint against plaintiffs in accordance with the School District's retaliatory policy[4]:

> There is concern for the emotional welfare of both I[G] and N[R].  The adoptive parents are preoccupied with discussing sexual issues of the two children with anyone who will listen.  They discuss how the children were horribly sexually abused while in their biological parent's care in Texas and in foster care.  The Oglesby[]s had adopted four children from the biological family, but have systematically rid themselves of two children and are now working on the last two, that being I[G] and N[R].  The Oglesby[]s discuss how the girls masturbate and the inappropriate style and settings of one versus the other.  They discuss the items the girls masturbate on including water spigots and sinks.  They have examined the girls themselves and claim that one of the twin's vaginas is very red inside.  The parents claim that the girls are sitting on special rugs and pillows and excessively masturbating.  They have requested that the [school nurse] supervise the sexual acting out of the children closer.  It is believed that the parents might have

---

[4] Plaintiffs contend that the School District, "acting by and through each of the individually named Defendants has over the years developed a policy and/or practice of retaliating against parents whom express concerns to the District regarding incompetent or abusive staff members and conditions adversely affecting the health and safety of students including those with disabilities that have special educational needs.  In that connection the retaliatory mechanism of choice of these individuals is the making of calculatedly false complaints of child abuse against the offending parents to the Child Protective Services Unit of the New York State Office of Children and Family Services."  Am. Compl. ¶ 11.

> installed special cameras to actually monitor the girls['] behaviors.  It is unknown if the parents are doing this for sexual gratification, but Munchausen[']s cannot be ruled out.

Am. Compl. ¶ 26.  The very next day, IG was interviewed at school by a CPS investigator and a member of the New York State Police, in the presence of defendant Sheely, the school psychologist.  IG was removed from her classroom just prior to her lunch period, and was taken to the guidance counselor's office where the interview took place.  As a result, IG became terrified and experienced bed wetting, self mutilation, and flashbacks.  IG further became sad, distant, tearful, compulsive and, among other things, unfocused.

Also on the day following the CPS complaint, ID was interviewed at school by a CPS investigator and a member of the New York State Police.  ID was brought to the principal's office where the interview took place.  Like his sister, ID became terrified as a result of the interview, and felt a pervading sense of danger associated with his fear that he might be taken away by the police.

NR was absent from school on April 25, 2007, but she, too, was later interviewed at the CPS office in Kingston, New York.  As a result of the interview, NR became terrified and experienced chanting, rocking and clinging behaviors.  NR also regressed to the behavior of a two-year-old, and became withdrawn, unfocused, and hysterical at the prospect of returning to school.

Later in the afternoon of April 25th, Donald Oglesby was contacted by a CPS investigator, and an interview was scheduled for the Oglesbys at the CPS office in Kingston the following day.  During their separate interviews, the Oglesbys were informed of the complaints made against them.  As of result of the complaint and subsequent CPS investigation the Oglesbys experienced unrelenting

fear, anger, exhaustion, inability to eat, humiliation, nausea, crying, and inability to function.  The Oglesbys suffered depression, began taking prescription sleep medications, and among other things, experienced a loss of the joy of parenting.

Subsequently, CPS notified plaintiffs that the complaint against them was unfounded, and therefore, the investigation was closed.  On September 11, 2006 plaintiffs filed a Notice of Claim with the School district alleging a violation of their rights under, *inter alia*, New York common law due to their filing a false complaint with CPS.  As a result, defendants retaliated against plaintiffs by (1) subjecting IG to a traumatizing Occupational Therapy evaluation, which was improperly conducted outside the presence of plaintiffs, (2) demanding plaintiffs consent to a medical/psychiatric evaluation, ostensibly of IG, by a physician selected by the School District, despite the available hospital records from IG's then recent inpatient stay, (3) forcing plaintiffs to defend themselves at a hearing regarding defendants' attempt to gain an order compelling said examination, (4) refusing to schedule a meeting of the Committee in Special Education (CSE) regarding IG, (5) refusing to obtain IG's medical and psychiatric records, despite their possession of a release of information authorization from plaintiffs, (6) refusing to conduct a CSE team evaluation of IG in order to classify her as emotionally disturbed, and (7) denying IG a free appropriate public education despite her self evident disability.  See Am. Compl. ¶ 39.


## IV.  Discussion

### A.    Rule 12(b)(6) Motion to Dismiss

As previously mentioned, when deciding a Rule 12(b)(6) motion to dismiss,

7

the court must accept the allegations of fact in the complaint as true, drawing all reasonable inferences in plaintiffs' favor.  See *supra*, at 2-3.  A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, ___ U.S. ___, 127 S.Ct. 1955, 1974 (2007).[5]  The Court of Appeals for the Second Circuit has recently interpreted the foregoing language as requiring that lower court apply "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*[,]" but does not require a heightened pleading standard for civil rights claims.  Iqbal, —— F.3d at ——, 2007 WL 1717803 at *11 (emphasis in original).

In support of their motion to dismiss, defendants argue that (1) plaintiffs have failed to identify with particularity the individuals who made the alleged false report to CPS, (2) as mandated reporters under section 419 of New York Social Services Law, defendants are immune from suit, and (3) in any event, defendants are not "state actors" as defined by section 1983.

In opposition to defendants' motion, plaintiffs argue that (1) their complaint is valid even without identification of the person or persons who filed the CPS report; (2) because they have alleged that defendants acted maliciously when making the CPS complaint, with knowledge of its falsity, they have established

---

[5] By its opinion in Bell Atlantic, the Supreme Court recently abrogated the often-cited language of Conley v. Gibson "that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  127 S.Ct. 1955, 1968 (2007) (quoting Conley, 355 U.S. 41, 45-46, 78 S.Ct.99 (1957)).  In so doing, the Court found that Conley "described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival."  Id., at 1969.

bad faith on the part of defendants and thus, section 419 immunity does not apply; and (3) defendants here, as employees of a public school district, which is a municipal arm of the state, are "state actors" pursuant to section 1983.

In their reply papers regarding the first motion and in their papers in support of the second motion to dismiss, defendants argue that plaintiffs' intimate association claim must be dismissed because plaintiffs fail to allege loss of custody. In addition, defendants argue plaintiffs' First Amendment retaliation claim is not ripe for review as they have failed to exhaust their administrative remedies under the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400-1490 ("IDEA").

The court will address the parties' arguments *seriatim*.

## 1.    Immunity

Defendants argue in the first instance that they enjoy statutory immunity from suit related to any alleged report of child abuse or maltreatment. As such, a brief discussion of the framework of the New York Social Services Law as relevant to this case is warranted. An affirmative obligation exists to report child abuse for, among others, school officials and medical professionals. N.Y. SOC. SERV. LAW §§ 413(1), 416 (McKinney 2006). Such persons are referred to as "mandated reporters." DeLeon v. Putnam Valley Bd. of Educ., 228 F.R.D. 213, 216 (S.D.N.Y. 2005). A mandated reporter who is an employee of a school or other relevant facility is further required to notify the person in charge of the school or facility when a report shall be made, at which time said person in charge will also become responsible to report the suspected abuse. See N.Y. SOC. SERV. LAW § 413(1). Persons who report suspected child abuse "shall have immunity

from any liability, civil or criminal, that might otherwise result by reason of such actions."  N.Y. Soc. Serv. Law § 419 ("section 419").  Said immunity shall apply, so long as the person "act[s] within the scope of their employment and do[es] not engage in willful misconduct or gross negligence."  Lentini v. Page, 5 A.D.3d 914, 915, 773 N.Y.S.2d 472, 473 (N.Y. App. Div. 3rd Dep't 2004) (internal citation omitted).  Actual or conclusive proof of child abuse or maltreatment is not necessary for immunity to attach, only "reasonable cause to suspect" same and the good faith of the person making the report in the discharge of their obligations and duties imposed by the statute.  Id. at 915, 773 N.Y.S.2d at 474 (internal citation omitted).  A presumption of good faith exists where a mandatory reporter was "discharging [her] duties and acting within the scope of [her] employment without gross negligence or willful misconduct."  Id.  However, a plaintiff may overcome this presumption by demonstrating persuasive evidence of bad faith.  See J.C. v. Mark Country Day School,  03-CV-1414, 2007 WL 201163, at *6 (E.D.N.Y. Jan. 23, 2007).

Here, plaintiffs contend that defendants maliciously filed a false report of child abuse against them in retaliation for recent complaints by plaintiffs against certain school officials.  At this stage, on a Rule 12(b)(6) motion to dismiss, the court must accept the plaintiffs' allegations of fact as true.   Plaintiffs have alleged that the defendant school employees were made aware of the details included in the report to CPS, and that just prior to the report, plaintiffs complained to the School District about certain issues relating to their children.  See Am. Compl. ¶¶ 13-15.  Plaintiffs cite case law from the New York State Supreme Court, Appellate Division, Second Department, albeit in the context of a claim for defamation, wherein motions to dismiss and for summary judgment were appropriately denied

where plaintiff alleged and proved facts, respectively, which established that defendants acted with malice.  See Hachmann v. County of Nassau, 29 A.D.3d 952, 818 N.Y.S.2d 102 (N.Y. App. Div. 2nd Dep't 2006); Zornberg v. North Shore Univ. Hosp., 29 A.D.3d 986, 815 N.Y.S.2d 719 (N.Y. App. Div. 2nd Dep't 2006). Here, as in Zornberg, plaintiffs have pleaded facts which, if proved, would establish bad faith.  As such, because the court can not determine at this time whether defendants enjoy immunity under section 419, plaintiffs will be allowed to move forward and conduct discovery in order to attempt to prove their allegations of bad faith.  See Langner v. Brown, 913 F.Supp. 260, 269 (S.D.N.Y. 1996) (quoting Lessler v. Little, 857 F.2d 866 (1st Cir.1988) ("[a] plaintiff 'is entitled to his day in court to prove exactly that ...'" which he properly alleges in his complaint)).

### 2.    Identity of Reporter

Defendants next argue that because plaintiffs do not actually know the identity of the reporter, and therefore have not identified the reporter in their amended complaint, plaintiffs are unable to state any claims against defendants.

Reports of child abuse or neglect are kept confidential, and are only made available to, among others, "any person who is the subject of the report or other persons named in the report[.]"  N.Y. Soc. Serv. Law § 422(4)(A)(d) (McKinney 2006).  While the subject of the report is entitled to know its contents, he or she is not entitled to know the identity of the person who made the report.  See DeLeon, 228 F.R.D. at 216 (citing N.Y. Soc. Serv. Law § 422(4)(A) ("Nothing in this section shall be construed to permit any release, disclosure or identification of the names or identifying descriptions of persons who have reported suspected child

abuse or maltreatment ... .")).   However, "a court, upon a finding that the information in the record is necessary for the determination of an issue before the court[,]" is entitled to the contents of the report, as well as the identity of the person who made the report.   N.Y. SOC. SERV. LAW § 422(4)(A)(e).   The New York State Commissioner of Social Services ("the Commissioner") is authorized by statute "to prohibit the release of data that would identify the person who made the report . . . , or the agency, institution, organization, program or other entity where such person is employed . . . , which he reasonably finds will be detrimental to the safety or interests of such person."   N.Y. SOC. SERV. LAW § 422(7).

Defendants argue that a mere allegation of bad faith does not allow plaintiffs to learn the identity of the reporter or reporters pursuant to the terms of section 422, and therefore they are unable to state a claim against defendants. Defendants further argue that plaintiffs' failure to identify the reporter with particularity in their complaint, violates what they contend is a heightened pleading standard for all section 1983 claims.   See Defs. Mem. of Law at 6-7, Dkt. No. 11, citing Ciambriello v. County of Nassau, 292 F.3d 307 (2d Cir. 2002). Defendants, however, neglect to inform the court that while the Court of Appeals for the Second Circuit held in Ciambriello that a heightened pleading standard exists for claims of conspiracy under 42 U.S.C. section 1985, see Ciambriello, 292 F.3d at 324-25, it has likewise noted, in accordance with the Supreme Court, that all other civil rights claims are evaluated pursuant to the liberal notice pleading standard of Fed. R. Civ. P. 8(a), see Phelps v. Kapnolas, 308 F.3d 180, (2d Cir. 2002) (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 122 S.Ct. 992 (2002)). Defendants' failure to identify the obvious distinction between the facts of their cited case and the present case is troubling.   In any event, for the reasons that

12

follow, the court finds that plaintiffs' amended complaint may not be dismissed for failure to state a claim due solely to plaintiffs' failure to identify the reporter or reporters with particularity.

Citing DeLeon v. Putnam Valley Board of Education, 228 F.R.D. 213, 216 (S.D.N.Y. 2005), defendants argue that plaintiffs here are merely on a "fishing expedition" and should not be found to have stated a claim where they cannot identify a defendant.  The court in DeLeon, having concluded that the interests in non-disclosure of the identity of a mandated reporter outweighed the interests in disclosure, found:

> "At a minimum, before breaching the privacy provided to mandated reporters by statute, a plaintiff ought to be able to offer some evidence of bad faith independent of the identity of the mandated reporter. If a plaintiff needs to learn the reporter's identity in order to make a case, then the complaint alleging discrimination was filed without foundation, in a fishing expedition to acquire ammunition not otherwise available to a litigant."

DeLeon, 228 F.R.D. at 220.  In DeLeon, the plaintiff contended that the report of child abuse was based on racial discrimination.  Unlike here, in DeLeon, the child who was the subject of the report revealed by deposition testimony that her parents hit her on the buttocks, thighs and back, and that when they did so with a belt, it would leave welts or bumps.  See id.  The court therefore found that a "substantial factual basis for the reporter's suspicion" existed.  Id.  No such substantial basis exists on the facts alleged here, however.  Here, there are no allegations of fact in the amended complaint which would support a "substantial factual basis" for suspicion of abuse by plaintiffs.  Moreover, plaintiffs have alleged facts which would support a conclusion of bad faith against defendants.  Plaintiffs allege that

13

defendants filed a false report against them to CPS and did so maliciously and in retaliation for plaintiffs' recent complaints against school officials.  Plaintiffs also contend that because the defendants were the only persons with knowledge of certain facts disclosed in the report, one or more of them is the person who filed the false report.  At this stage, the court must accept these allegations of fact as true, and draw all reasonable inferences in favor of plaintiffs, and therefore, here, unlike DeLeon, some showing of bad faith exists.  Also, unlike DeLeon it is not at all clear that the plaintiffs here must learn the reporter's identity in order to survive a motion to dismiss.  Plaintiffs here have sufficiently narrowed their allegations, which if proved true after an opportunity for discovery, would establish that the report was made in bad faith.  In any event, whether this court should order the release of identifying information is a question to be resolved during discovery, not when deciding a Rule 12(b)(6) motion to dismiss.  See DeLeon, 228 F.R.D. at 217-221 (balancing interests of disclosure verses non-disclosure of identity of reporter on appeal from a magistrate's order regarding a motion to compel).  Therefore, plaintiffs' amended complaint may not be dismissed at this time for failure to state a claim due solely to plaintiffs' failure to identify the reporter or reporters with particularity.

### 3.    State Action

Defendants also advance the argument that they are not "state actors" within the intendment of section 1983, and therefore, plaintiffs' complaint, comprised solely of two section 1983 claims, must be dismissed.  Plaintiffs contend that, as employees of a municipal arm of the state, defendants are, in fact, "state actors."

In order to state a claim pursuant to 42 U.S.C. § 1983 , a plaintiff must

14

allege that (1) "some person has deprived him of a federal right," and (2) "the person who has deprived him of that right acted under color of state ... law." Velez v. Levy, 401 F.3d 75, 84 (2d Cir. 2005), (quoting Gomez v. Toledo, 446 U.S. 635, 640, 100 S.Ct. 1920 (1980)). Traditionally, the definition of acting under color of state law requires that the section 1983 defendant "exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." Kern v. City of Rochester, 93 F.3d 38, 43 (2d Cir. 1996) (quoting West v. Atkins, 487 U.S. 42, 49, 108 S.Ct. 2250, 2255 (1988) (internal quotation and citation omitted)). Therefore, when a defendant abuses the position given to him by the state, he is deemed to have acted under color of state law. Id., (citing West, 487 U.S. at 49-50, 108 S.Ct. at 2255-56).

Here, plaintiffs contend that defendants violated their right of intimate association in violation of the First and Fourteenth Amendments when they maliciously made a false report of child abuse to CPS, and that they did so in retaliation for speech protected by the First Amendment. The defendant employees of the School District argue, however, that they are not "state actors" pursuant to section 1983. In support of their argument, Defendants cite, among others, a case from the Eastern District of New York, J.C. v. Mark Country Day School, wherein the court held that a defendant teacher who reported suspected child abuse to a state agency was not a state actor for purposes of plaintiffs' section 1983 claim. See 2007 WL 201163, at *3. However, as plaintiffs here point out, that case, as well as the others cited by defendants, involve private entities and their employees who were accused of civil rights violations for reporting suspected child abuse to a state agency. See Defs.' Mem. of Law at 5-6, Dkt. No. 11. The court in Mark Country reached its conclusion after

15

distinguishing <u>Kia v. McIntyre</u>, wherein the Court of Appeals for the Second Circuit held that "where a traditionally private entity is acting as 'reporting and enforcement machinery for [] a government agency charged with detection and prevention of child abuse and neglect,' such an entity is a state actor." <u>Mark Country</u>, 2007 WL 201163, at *2, (<u>quoting Kia v. McIntyre</u>, 235 F.3d 749, 756-57 (2d Cir. 2000) (<u>cert. denied</u>, <u>Kia P. ex rel. Mora P. v. New York City</u>, 534 U.S. 820, 122 S.Ct. 51 (2001))).  The court in <u>Mark Country</u> noted that unlike the defendant hospital in <u>Kia</u>, the defendant teacher there merely reported the suspected abuse, and concluded that therefore, she was not a state actor.

Defendants accordingly argue, based on <u>Mark Country</u> and <u>Kia</u>, that they may not be deemed state actors simply because, as plaintiffs allege, they *reported* child abuse, not that they were part of the CPS enforcement mechanism.  At oral argument, counsel for defendants clarified their argument to state that regardless of defendants' status as employees of a public school, mere reporting of child abuse does not rise to the level of state action.

The court does not agree.  It is clear from a reading of <u>Kia</u> that the Second Circuit's decision was rendered after analysis of state action in the context of the private sector's role in the enforcement mechanism of CPS, a state agency.  <u>See Kia</u>, 235 F.3d at 755-56.  <u>Mark Country</u>, also dealing with a private entity, distinguished <u>Kia</u> on the basis of the reporter versus enforcer distinction, but did not hold, as defendants here argue, that mere reporting of child abuse does not render one a state actor regardless of the private or public status of their employer. <u>See</u> Defs.' Mem. of Law at 6, <u>citing</u> <u>Mark Country</u>, 2007 WL 201163, at *3 (pinpoint citation omitted by defendants).

Here, to be sure, there is no question that defendants' employer, the School

16

District, is a municipal arm of the State of New York, and is therefore not a private, but a governmental entity.  While it is true that "[m]ere employment by a state or municipality does not automatically mean that a defendant's actions are taken under the color of state law[,]" Kern, 93 F.3d at 43 (citing Polk County v. Dodson, 454 U.S. 312, 319-20, 102 S.Ct. 445, 450-51 (1981)), nonetheless, where a state employee "abuses the position given to him by the State," he is, in fact, a state actor, see id., citing West, 487 U.S. at 49-50.  Here, accepting plaintiffs' factual allegations in the amended complaint as true, the defendants, by filing the child abuse report at issue here, acted not out of a reasonable belief that child abuse occurred, but with retaliatory motive, utilizing information they learned through their employment with a municipal arm of the state.  Accordingly, at this procedural stage of the litigation, the court cannot find that defendants are not state actors, and plaintiffs' section 1983 claims may not be dismissed for failure to state a claim on that basis.

### 4.    Right to Intimate Association

Defendants next argue that Count I of plaintiffs' amended complaint, a section 1983 claim for violation of their right to intimate association, should be dismissed for failure to state a claim because plaintiffs fail to allege a loss of custody.  Despite the fact that, as counsel for defendants noted at oral argument, allowing an intimate association claim to go forward on the facts of this case would be delving into "unchartered territory", defendants fail to meaningfully discuss the parameters of such a claim in their papers.[6]  To be fair, plaintiffs'

---

[6] Notably, defendants' memorandum of law in support of their first motion to dismiss is completely devoid of the argument that one must allege a loss of custody in order to sustain a claim for violation of the right to intimate association, despite the fact that even plaintiffs' initial

papers were similarly lacking in this regard.  However, before addressing

defendants' argument as to plaintiffs' intimate association claim, a brief discussion

of the legal landscape of such a claim is warranted.

At the outset, it should be made clear that the source of a right to intimate

association in the U.S. Constitution is anything but obvious.  As Judge Cardamone

so aptly observed,

> Although clearly recognized in a general way by the
> Supreme Court and in scholarly writings, all of [the]
> boundaries [of the constitutional right of intimate
> association] have not yet been fixed.  We think it
> unnecessary for our purposes to attempt to fully remedy
> that lack.  Like the wind that blows where it wills and
> can be heard, yet no one knows 'from where it cometh
> and whither it goeth' John 3:8, this constitutional right is
> real despite the lack of exact knowledge regarding its
> derivation and contours.

Patel v. Searles, 305 F.3d 130, 133 (2d Cir. 2002).  Nonetheless, due to the unique

nature of the facts in support of the claim before this court, a brief discussion of

the source of the right to intimate association is warranted here.

The right to intimate association "guarantees an individual the choice of

entering an intimate relationship free from undue intrusion by the state."

Sanitation and Recycling Industry, Inc. v. City of New York, 107 F.3d 985, 996

(2d Cir. 1997) (citing Roberts v. United States Jaycees, 468 U.S. 609, 617-18, 104

S.Ct. 3244 (1984)).  The Supreme Court has extended this right to relationships

that "attend the creation and sustenance of a family – marriage, childbirth, the

raising and education of children, and cohabitation with one's relatives."  Id.

---

complaint included a claim for violation of the right to intimate association.

18

quoting Roberts, 468 U.S. at 619, 104 S.Ct. at 3250.  The Court has stated that the right to intimate association "receives protection as a fundamental element of personal liberty[,]"  Roberts, 468 U.S. at 618, 104 S.Ct. at 3249, and is generally grounded in substantive due process under the Fourteenth Amendment, see Patel v. Searles, 305 F.3d 130, 135 (2d Cir. 2002) (citing Roberts, 468 U.S. at 618-19, 104 S.Ct. 3244)).  Since Roberts, the Court has at times analyzed the right to intimate association as emanating from the First Amendment.  See Adler v. Pataki, 185 F.3d 35, 42-43 (2d Cir. 1999) (citing City of Dallas v. Stanglin, 490 U.S. 19, 23-24, 109 S.Ct. 1591 (1989)); Lying v. International Union, UAW, 485 U.S. 360, 364-66, 108 S.Ct. 1184 (1988).  In those instances, however, the Court was not dealing with intimate familial relationships.  The issue in Stanglin was whether an ordinance which restricted admission to certain dance halls to persons between the ages of fourteen and eighteen was in violation of the First Amendment's right to freedom of association.  See Stanglin, 490 U.S. at 20-21, 109 S.Ct. 1591.  In Lying the issue was whether a statute which precluded eligibility for food stamps where a member of the household was on strike violated the First Amendment associational and expressive rights of appellees.  See Lying, 485 U.S. 360, at 364, 108 S.Ct. 1184.  On the other hand, cases where matters of familial intimacy such as marrying and raising a family are at issue tend to be analyzed under the Due Process Clause of the Fourteenth Amendment.  See Adler, 185 F.3d at 42 (citing Cleveland Bd. of Educ. v. LaFleur, 414 U.S. 632, 639, 94 S.Ct. 791 (1974); Loving v. Virginia, 388 U.S. 1, 12, 87 S.Ct. 1817 (1967); Paul v. Davis, 424 U.S. 693, 713, 96 S.Ct. 1155 (1976); Zablocki v. Redhail, 434 U.S. 374, 383-85, 98 S.Ct. 673 (1978)).  See also Stanley v. Illinois, 405 U.S. 645, 651, 92 S.Ct. 1208, 1213 (1972).  Cases in the Second Circuit which specifically deal with the right to

intimate association vis-a-vis parent-child relationships, do so applying the principles of substantive due process.  See Anthony v. City of New York, No. 00-Civ.-4688, 2001 WL 741743, at *12 (S.D.N.Y. July 2, 2001) (quoting Tenenbaum v. Williams, 193 F.3d 581, 600 (2d Cir. 1999) ("Family members have, 'in general terms, a substantive right under the Due Process Clause to remain together without the coercive interference of the awesome power of the state.'")); Wilkinson v. Russell, 182 F.3d 89, 104 (2d Cir. 1999).  Therefore, while plaintiffs here ground their intimate association claim in the First and Fourteenth Amendments, see Am. Compl. ¶ 42, in accordance with the aforementioned relevant caselaw, it should be analyzed under the legal framework of the substantive due process right found in the Fourteenth Amendment.

Nonetheless, the standard to apply in order to determine whether the right to intimate association has been violated varies as much as the source of the right.  In some cases, the Court has suggested that the right is not violated "unless the challenged action has the likely effect of ending the protected relationship." Adler, 185 F.3d at 43 (citing, e.g., Lying, 485 U.S. at 364-66, 108 S.Ct. 1184).  In other cases, the right is not violated unless the challenged act was done with the intent of affecting the relationship, see Adler, 185 F.3d at 43 (citing Califano v. Jobst, 434 U.S. 47, 54, 98 S.Ct. 95 (1977)), or was arbitrary or "an 'undue intrusion' by the state into the [family] relationship[,]" Adler, 185 F.3d at 44 (quoting Roberts, 468 U.S. at 618, 104 S.Ct. 3244)).

Moreover, while "[t]he fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their children to the State[,]" Santosky v. Kramer, 455 U.S. 745, 753, 102 S.Ct. 1388, 1394-95

(1982), it is clear that a constitutionally protected liberty interest in family integrity is not absolute, but "is counterbalanced by the compelling governmental interest in the protection of minor children, particularly in circumstances where the protection is considered necessary as against the parents themselves." Wilkinson, 182 F.3d at 104 (quoting Manzano v. South Dakota Dep't of Social Servs., 60 F.3d 505, 510 (8th Cir. 1995) (internal quotation omitted)).

Here, defendants argue that plaintiffs' first claim for a violation of their right to intimate association must be dismissed because such a right does not include a right to be free from child abuse investigations, and because plaintiffs fail to allege a loss of custody. Plaintiffs counter that their complaint is legally sufficient in that it alleges a false complaint was made by defendants which was intended to devastate their family psychologically, and in fact succeeded in doing just that. Ostensibly, therefore, plaintiffs oppose defendants' argument that a loss of custody is required in order to succeed on their claim. The cases cited by defendants in support of their argument do not stand for the proposition that a loss of custody is required, only that parental interest in the custody of their children is a fundamental, constitutionally protected liberty interest. See Gottlieb v. County of Orange, 84 F.3d 511, 518 (2d Cir. 1996); Watterson v. Page, 987 F.2d 1, 8 (1st Cir. 1993). On the other hand, while many cases make clear that parents have a constitutionally protected liberty interest in the custody, care, education and management of their children, see, e.g. Santosky, 455 U.S. at 753, 102 S.Ct. 1388, implying that the liberty interest is not in custody alone, the court's research has not revealed a single case where relief was awarded for violation of the right of intimate association without a loss of custody, c.f. Kia v. McIntyre, 235 F.3d 749 (2d Cir. 2000) (hospital withheld custody of newborn infant from mother after

toxicology test revealed presence of methadone in infant's urine); <u>Wilkinson</u>, 182 F.3d at 94 (father was unable to see his son for over nine months, after being arrested and charged with sexually abusing him); <u>Gottlieb</u>, 84 F.3d at 515 (father removed from family home during the pendency of child abuse investigation); <u>Watterson</u>, 987 F.2d at 5 (children were removed from mother's home and placed in foster care pending child abuse investigation and prosecution).

The Second Circuit has held that in order to prevail on a claim for violation of the substantive due process right of familial association, a plaintiff "must demonstrate that [the alleged offending act] was so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even were it accompanied by full procedural protection." <u>Anthony v. City of New York</u>, 339 F.3d 129, 143 (2d Cir. 2003) (<u>quoting</u> <u>Tenenbaum</u>, 193 F.3d at 600) (internal quotations omitted)). In both <u>Anthony</u> and <u>Tenenbaum</u>, the Second Circuit found that loss of custody for short periods of time does *not* rise to the level of egregiousness necessary for a substantive due process violation, where the purpose of the separation was to ensure the physical well-being of the detained individual, which is a legitimate governmental objective. <u>See</u> <u>Anthony</u>, 339 F.3d at 143; <u>Tenenbaum</u>, 193 F.3d at 600-601. Here, plaintiffs allege that the offending act was a malicious and false report of child abuse, which set in motion a series of events that wreaked psychological havoc on their family. Taking these facts, which were alleged in the amended complaint, as true, it is possible that, "unchartered territory" or not, defendants' actions could be considered so shocking, arbitrary and egregious as to render them a violation of plaintiffs' substantive due process rights. Therefore, at this stage procedurally, the court is unable to grant defendants' motion to dismiss plaintiffs' first cause of action for

22

failure to state a claim.

### 5.    Failure to Exhaust Administrative Remedies Under IDEA

Finally, defendants argue that plaintiffs' second cause of action must be dismissed for failure to exhaust their administrative remedies pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400-1490 ("IDEA"). To be sure, such a motion is more properly brought as a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).  However the motion is styled, defendants' argument is flawed.

Plaintiffs' second cause of action is a section 1983 claim predicated on a claim for retaliation in violation of their First Amendment rights.  In order to state a First Amendment retaliation claim, plaintiffs must allege that 1) they had an interest protected by the First Amendment, (2) the defendants' actions were motivated by or substantially caused by the plaintiffs' exercise of that right, and (3) the defendants' actions chilled the exercise of those rights.  See Gill v. Pidlypchak, 389 F.3d 379, 382 (2d Cir. 2004), citing Curley v. Village of Suffern, 268 F.3d 65 (2d Cir. 2001).

In support of their argument that this claim may not survive a motion to dismiss because plaintiffs have failed to exhaust their administrative remedies under the IDEA, defendants cite Polera v. Board of Education of the Newburgh Enlarged City School District, 288 F.3d 478 (2d Cir. 2002).  In Polera, a high school senior sued her school district for failure to provide her with a free appropriate public education under the Americans with Disabilities Act, the Rehabilitation Act, the United States and New York State Constitutions, and New York State common law.  See Polera, 288 F.3d at 480.  The Court of Appeals for the Second Circuit vacated the district court's order and remanded for dismissal

for lack of subject matter jurisdiction because the plaintiff sought relief under the ADA and Rehabilitation Act that was available under the IDEA, and thus she was first required to exhaust administrative remedies under the IDEA before bringing suit. See id. at 491. In Polera, the court determined that the IDEA was intended to remedy precisely the wrongs complained of by the plaintiff. See Polera, 288 F.3d at 488. Here, plaintiffs seek remedies for defendants' maliciously filing a false report of child abuse against them in retaliation for their prior complaints against defendants regarding alleged failures to provide a safe environment for their daughter. In addition, plaintiffs allege defendants further retaliated against them for the filing of this lawsuit by creating various roadblocks preventing them from having their daughter classified as emotionally disturbed in order that she may receive special education services from the School District. To the extent that plaintiffs' daughter's rights to a free appropriate public education are implicated by defendants' alleged retaliatory actions against plaintiffs, the IDEA would be only peripherally involved. As such, exhaustion of remedies under the IDEA is in no way required in order for plaintiffs to bring a claim of First Amendment retaliation in this court. Accordingly, defendants' motion to dismiss plaintiffs' second cause of action is denied.

### 6. Claims Against the School District

Although not addressed in their papers, defendants additionally seek dismissal of plaintiffs' section 1983 claims against the School District. It is true that as a municipal government body, a school district is considered a "person" within the meaning of section 1983. See Back v. Hastings on Hudson Free Sch. Dist., 365 F.3d 107, 128 (2d Cir. 2004) (citing Jett v. Dallas Indep. Sch. Dist., 491

U.S. 701, 735-36, 109 S.Ct. 2702 (1989); <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 689, 98 S.Ct. 2018 (1978)).  However, like any municipality, a school district may not be held liable on a section 1983 claim under a theory of *respondeat superior*, and will only be liable if its "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury."  <u>See id.</u> (quoting <u>Monell</u>, 436 U.S. at 694, 98 S.Ct. 2018).   Here, plaintiffs allege in their amended complaint that

> The [School] District[,] acting by and through each of the individually named Defendants[,] has over the years developed a policy and/or practice of retaliating against parents who express concerns to the [School] District regarding incompetent and/or abusive staff members and conditions adversely affecting the health and safety of students including those with disabilities that have special educational needs.  In that connection the retaliatory mechanism of choice of these individuals is the making of calculatedly false complaints of child abuse against the offending parents to the [CPS] Unit of the New York State Office of Children and Family Services.

Am. Compl. ¶ 11.  Defendants argue that these statements alone are insufficient to state a claim under <u>Monell</u>, *supra*, because they lack enough facts to support a conclusion that the School District had a policy or custom that caused discrimination.

The pleading requirement for a section 1983 claim against a municipality will be met if a plaintiff alleges that "'a formal policy which is officially endorsed by the municipality' caused the plaintiff's injuries."  <u>Perez v. Westchester County Dep't of Corrs.</u>, No. 05-Civ.-8120, 2007 WL 1288579, at *5 (S.D.N.Y. Apr. 30, 2007) (quoting <u>Moray v. City of Yonkers</u>, 924 F.Supp.8, 12 S.D.N.Y. (1996)

(citing Monell, 436 U.S. at 690))).  In Perez, the plaintiff was deemed to have met that standard where, on a series of section 1983 claims based upon the defendant corrections department's failure to offer Muslim inmates the same kosher meat provided to Jewish prisoners, plaintiff alleged that, among other things, "the gambits surrounding the denial of acceptable [h]alal food ... are tried, measured, and charted by [jail] administrators... ." Id., 2007 WL 1288579, at *5.  Here, plaintiffs allege that the "retaliatory mechanism of choice" of the individual defendants is to file a false complaint of child abuse with CPS, in accordance with the School District's policy or practice of retaliation against parents like the plaintiffs, who address complaints against defendants.  Because said allegation clearly meets the standard for pleading a claim under Monell, defendants' motion to dismiss the Amended Complaint as against the School District is denied.

## V.  Conclusion

For the aforementioned reasons, it is hereby ORDERED that defendants' first motion to dismiss, see Dkt. No. 11, and defendants' second motion to dismiss, see Dkt. No. 21, collectively seeking dismissal of all pending causes of action against them for failure to state claims upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6) are DENIED.


IT IS SO ORDERED.

DATED:     June 28, 2007
           Syracuse, New York

_____
Neal P. McCurn
Senior  U.S. District Judge

26